**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

GAWAYNE MCKNIGHT,                                      Case No. 1:11-cv-116

          Plaintiff,                                       Dlott, J.
                                                      Bowman, M.J.

     v.

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY,

          Defendant.

## REPORT AND RECOMMENDATION

Plaintiff Gawayne McKnight filed this Social Security appeal in order to challenge the Defendant's finding that he is not disabled. *See* 42 U.S.C. §405(g). Proceeding through counsel, Plaintiff presents four claims of error. As explained below, although the issues are relatively close, I conclude that the finding of non-disability should be REVERSED, because it is based upon legal error and is not supported by substantial evidence in the administrative record.

### I.  Summary of Administrative Record

On June 15, 2006, Plaintiff filed applications for Disability Insurance Benefits ("DIB") and for Supplemental Security Income Benefits (SSI), alleging a disability onset date of June 1, 2003 due to a combination of mental and physical impairments, including depression, drug and alcohol abuse, suicidal ideation, right knee replacement, high blood pressure, irritable bowel syndrome, diarrhea, and a heart condition. Based upon substantial gainful activity and significant earnings, Plaintiff subsequently amended his initial onset date to August 1, 2005 (Tr. 19).

After Plaintiff's claims were denied initially and upon reconsideration, he requested a hearing *de novo* before an Administrative Law Judge ("ALJ"). ALJ Deborah Smith held two evidentiary hearings, beginning in October 2008 and continued in January 2009. (Tr. 582-670). Represented by counsel, Plaintiff appeared at the October 2008 hearing, with counsel alone appearing on his behalf at the January 2009 hearing.[1] Between the two hearings, ALJ Smith heard testimony from Plaintiff, from vocational expert Micha Daoud, from medical expert Dr. Hershel Goren regarding Plaintiff's physical limitations, and from medical expert George Rogers, Ed.D, regarding Plaintiff's mental limitations.

The record before the ALJ reflects that Plaintiff was born in 1960, graduated from high school, and completed two or three years of college. (Tr. 29, 99, 211). Plaintiff had been employed at a variety of retail stores, including Kroger (for 15 years), Target, and Home Depot. However, Plaintiff was fired from all of his previous positions. (Tr. 601). Plaintiff lives with his parents and is able to take care of his personal needs, perform light housekeeping, and prepare simple meals. He can drive and go grocery shopping.

On March 12, 2009, ALJ Smith issued a written decision denying Plaintiff's claims. (Tr. 16-30). The Appeals Council denied Plaintiff's request for further review. Therefore, the ALJ's decision stands as the Defendant's final determination.

In the "Findings" representing the rationale of her decision, the ALJ determined that Plaintiff has not engaged in substantial gainful activity since his amended alleged

---

[1]Plaintiff requested a continuance after becoming ill that morning; however, the ALJ denied Plaintiff's motion to continue the second hearing on grounds that Plaintiff had already provided complete testimony, and the second hearing was being held primarily to hear testimony from two medical experts. (Tr. 624).

onset date of August 1, 2005, and that he suffers from the following severe impairments: "a history of total right knee arthroplasty, depression, anxiety, prescription drug abuse, and marijuana use." (Tr. 21). The ALJ additionally found that Plaintiff's claimed impairments of chronic diarrhea, irritable bowel syndrome, hypertension and cardiac issues do not result in any work limitations and therefore are not severe impairments. (Tr. 24). Considering all of Plaintiff's impairments, the ALJ concluded that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." (*Id.*). The ALJ determined that Plaintiff retains the residual functional capacity ("RFC") to perform light work, with the following limitations:

> he can stand and walk only two hours in the course of a day and can only occasionally climb ramps and stairs or crouch. He must avoid kneeling, crawling, ladders, and ropes, and cannot work at unprotected heights. The claimant should have no public contact and should work alone, not in tandem with others, in a low stress environment. He is capable of carrying out tasks where duties are relatively static and changes can be explained, but cannot do tasks that require independent prioritization or more than daily planning. The claimant also can interact occasionally, but not in situations that require resolving conflict or persuading others to follow demands.

(Tr. 25-26). Ultimately, the ALJ concluded that although Plaintiff could not perform his past work, he was not under a disability, as defined in the Social Security Act, because there were jobs "that exist in significant numbers in the national economy that the claimant can perform." (Tr. 29). Thus, the ALJ concluded that Plaintiff was not entitled to either DIB or SSI benefits. (Tr. 30).

On appeal to this court, Plaintiff asserts that the ALJ committed four errors: (1) by finding that Plaintiff could sustain full-time work; (2) by rejecting limitations found by Plaintiff's treating physicians; (3) by failing to find Plaintiff's irritable bowel syndrome and

chronic diarrhea to be "severe" impairments; and (4) by rejecting Plaintiff's complaints of disabling pain.

## II. Analysis

### A. Judicial Standard of Review

To be eligible for SSI or DIB benefits, a claimant must be under a "disability" within the definition of the Social Security Act. *See* 42 U.S.C. §1382c(a). Narrowed to its statutory meaning,[2] a "disability" includes only physical or mental impairments that are both "medically determinable" and severe enough to prevent the applicant from (1) performing his or her past job and (2) engaging in "substantial gainful activity" that is available in the regional or national economies. *See Bowen v. City of New York*, 476 U.S. 467, 469-70 (1986).

When a court is asked to review the Commissioner's denial of benefits, the court's first inquiry is to determine whether the ALJ's non-disability finding is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (additional citation and internal quotation omitted). In conducting this review, the court should consider the record as a whole. *Hephner v. Mathews*, 574 F.2d 359, 362 (6th Cir. 1978). If substantial evidence supports the ALJ's denial of benefits, then that finding must be affirmed, even if substantial evidence also exists in the record to support a finding of disability. *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994). As the Sixth Circuit has explained:

---

[2] The definition of the term "disability" is essentially the same for both DIB and SSI. *See Bowen v. City of New York*, 476 U.S. 467, 469-70 (1986).

4

The Secretary's findings are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion . . . . The substantial evidence standard presupposes that there is a 'zone of choice' within which the Secretary may proceed without interference from the courts.  If the Secretary's decision is supported by substantial evidence, a reviewing court must affirm.

*Id.* (citations omitted).

In considering an application for disability benefits, the Social Security Agency is guided by the following sequential benefits analysis: at Step 1, the Commissioner asks if the claimant is still performing substantial gainful activity; at Step 2, the Commissioner determines if one or more of the claimant's impairments are "severe;" at Step 3, the Commissioner analyzes whether the claimant's impairments, singly or in combination, meet or equal a Listing in the Listing of Impairments; at Step 4, the Commissioner determines whether or not the claimant can still perform his or her past relevant work; and finally, at Step 5, if it is established that claimant can no longer perform his or her past relevant work, the burden of proof shifts to the agency to determine whether a significant number of other jobs which the claimant can perform exist in the national economy.  *See Combs v.  Commissioner of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006); 20 C.F.R. §§404.1520, 416.920.

A plaintiff bears the ultimate burden to prove by sufficient evidence that he or she is entitled to disability benefits.  20 C.F.R. § 404.1512(a).  A claimant seeking benefits must present sufficient evidence to show that, during the relevant time period, he or she suffered an impairment, or combination of impairments, expected to last at least twelve months, that left him or her unable to perform any job in the national economy.  42 U.S.C. § 423(d)(1)(A).  In this case, Plaintiff alleges that the four previously referenced errors require remand back to the Commissioner.

**B. Specific Claims of Error**

**1. Ability to Sustain Full-Time Work**

Plaintiff first argues that the ALJ incorrectly concluded that Plaintiff could sustain full-time work. Plaintiff contends that the ALJ should have found additional limitations which would have precluded full-time work, including specific limitations based upon Plaintiff's testimony, and limitations based upon his need for frequent medical treatment.

**a. Rejection of Further Limitations Based Upon Plaintiff's Testimony**

Plaintiff argues that the ALJ erred by failing to include limitations based specifically upon Plaintiff's testimony that he experiences daily thoughts of suicide, has an occasional need for a cane, is unable to sit and/or stand for more than 30 minutes, and is unable to focus for more than 20 minutes at a time.[3] Although Plaintiff contends that his testimony "was corroborated by the RFC opinions" of treating and examining physicians, no treating or examining physician offered opinions that Plaintiff required each and every specific limitation that Plaintiff's testimony suggested.

The ALJ discounted Plaintiff's testimony concerning the above-listed limitations, based in part upon her credibility finding. She found that Plaintiff "was not a credible witness for a number of reasons" including his lack of ongoing mental health treatment, his long history of substance abuse, his denial of that abuse, and his noncompliance with recommended treatment. (Tr. 26). Plaintiff does not directly refute any of these reasons.[4]

---

[3] Plaintiff also argues that he is limited by his need to use the bathroom frequently, but because Plaintiff asserts this condition as a separate error, that issue is discussed separately below.

[4] Plaintiff's mother reported on 6/26/05 that Plaintiff "gets high on prescription drugs" and "believes his problems [will] disappear with the use of prescription drugs and alcohol." (Tr. 124). She states that Plaintiff's substance abuse issues began in college. (Tr. 125). Plaintiff himself testified that he had three past DUIs as a result of taking too much prescription medication, and that he tried

It is notable that Plaintiff's own testimony undercuts his contention that the ALJ should have added a limitation requiring use of a cane, or a restriction on his ability to focus for more than 20 minutes. Plaintiff testified that he did not "need [a cane] generally walking." (Tr. 600). He also testified that he spends most of the hours of the day watching television - an activity that presumably requires some modest ability to focus for more than 20 minutes. Because substantial evidence in the record supports the ALJ's rejection of Plaintiff's subjective complaints of most of the additional limitations (use of a cane, defined time limits on focusing, and daily suicidal thoughts), I find no error in the ALJ's failure to assign additional limitations based upon that particular testimony.

On the other hand, although the record does not support a defined "20 minute" concentration limit, the record does contain consistent reports that Plaintiff is at least moderately impaired in his ability to maintain attention, concentration, persistence, and pace. (Tr. 35). The ALJ determined that Plaintiff should work alone in a "low stress environment," but found no specific limitations concerning persistence and pace. Because remand is required for other errors, as discussed more fully herein, this issue also should be addressed.

### b. Additional Limitations Based Upon Frequency of Medical Care

As additional support for his first claim, Plaintiff argues that the ALJ erred in failing to account for the number of medical appointments he attends on an annual basis. By way of example, Plaintiff asserts that in 2006, he had 11 doctor appointments and 2 emergency room visits. In 2007, he claims a total of 31 medical appointments

marijuana in December 2007 for his nausea (Tr. 587-588).

and in 2008, he claims 34 visits.  Unfortunately, Plaintiff does not cite to any documents in the administrative record to support his assertions.[5]  This Court declines to canvass Plaintiff's entire medical record to confirm the number, dates, and times of Plaintiff's various appointments.  Given the lack of any documentary reference, this Court cannot determine whether the various claimed appointments were for care pertaining to Plaintiff's severe impairments, or whether they concerned routine or non-urgent matters.

Moreover, Plaintiff does not appear to have raised the frequency of his medical appointments with any specificity before the ALJ.  The only hint of this issue appears in counsel's question to the vocational expert on cross-examination concerning how many days per month a person could miss and remain employed.  The VE responded that a person in the referenced jobs could miss "[n]o more than two days per month."  (Tr. 616).  By Plaintiff's own reckoning, he averaged fewer than two appointments per month in 2006.  While he claims to have averaged in excess of 2 appointments per month in 2007 and 2008, Plaintiff testified that some of his appointments, as often as three times per week, were for speech and language therapy, physical therapy, and occupational therapy, in which the therapists provided treatment at Plaintiff's home.  (Tr. 618). There is no evidence that a significant number of those appointments could not have been scheduled during non-work hours.  Given the lack of citation to the administrative record and the fact that Plaintiff did not present the issue directly to the ALJ, remand is not required for this claim.

## 2.  Rejection of Opinions by Treating and Examining Physicians

Plaintiff's  second  statement  of  error  -  that  the  ALJ  improperly  rejected  the

---

[5]In either a mathematical or typographical error, Plaintiff alleges that the total of 31 visits in 2007 includes "25 doctor appointments and 16 ER visits/testings or admissions."  (Doc. 10 at 13).

opinions offered by various treating and examining physicians - closely relates to his first assertion of error concerning the assessment of his RFC, to the extent that five different medical sources[6] determined that Plaintiff had greater limitations than found by the ALJ, and that those limitations were disabling.

Aside from two treating and three examining source opinions cited by Plaintiff, the record includes opinions by four non-examining consultants who concluded that Plaintiff is not disabled. The ALJ most heavily relied upon the opinions of two medical experts, Drs. Goren and Rogers, who testified, after reviewing all of Plaintiff's records at the second hearing, that neither Plaintiff's mental nor physical limitations were disabling. *See generally Hale v. Sec'y of Heath & Human Servs.*, 816 F.2d 1078, 1083 (6th Cir. 1987)(medical expert's testimony represented substantial evidence); *Buxton v. Halter*, 246 F.3d 762, 775 (6th Cir. 2001); *Callahan v. Sec'y of Health & Human Servs.*, 896 F.2d 1369 (Table), 1990 WL 18060 at *2 (6th Cir. Mar. 4, 1990)("The conclusions of an independent medical advisor provide medical support for the ALJ's determinations."). In addition to the testimony of those two medical experts, the Defendant Commissioner notes that two additional agency consultants (Drs. Starr and Villanueva) concluded that Plaintiff could perform medium work with occasional climbing of ladders, ropes and scaffolds. (Tr. 272-273, 278). However, the ALJ neither discussed nor adopted those opinions.

Applicable regulations generally require the Commissioner to assign "controlling" weight to the opinions of treating physicians, and greater weight to the opinions of examining physicians than to the opinions of non-examining consultants. For example,

---

[6] Plaintiff mistakenly refers to four treating sources, but proceeds to discuss two treating sources and three examining (non-treating) consultants.

the regulation pertinent to evaluation of a treating physician's opinion states: "If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight." 20 C.F.R. § 404.1527(d)(2). In determining the weight to give to any medical source opinion, an ALJ must also consider: 1) the examining relationship between the medical source and claimant; 2) the treatment relationship, including the length of treatment, frequency of examination, and nature and extent of relationship; 3) support by medical evidence; 4) consistency of the opinion with the record as a whole; 5) the source's area of specialization; and 6) any other factors which support or contradict the opinion. *Id.*

Notwithstanding the "controlling" weight usually afforded to the opinions of treating physicians, an ALJ may reject the opinions of a treating physician so long as he or she provides "good reasons" for doing so. Thus, "if the treating physician's opinion is not supported by objective medical evidence, the ALJ is entitled to discredit the opinion as long as he sets forth a reasoned basis for his rejection." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003); *see also* 20 C.F.R. § 1527(d)(2). And regardless of medical opinions on the subject, determination of a claimant's residual functional capacity is ultimately "reserved to the Commissioner." 20 C.F.R. §404.1527(e)(2). Where conclusions regarding a claimant's functional capacity are not substantiated by objective evidence, the ALJ is not required to credit those conclusions. *Cutlip v. Secretary of Health and Human Services*, 25 F.3d 284, 287 (6th Cir. 1994).

In cases where the medical records are extensive and/or particularly complex, an ALJ may seek testimony from an independent medical advisor or medical expert (ME)

as ALJ Smith did in this case, in order to "make sense of the record." *Buxton*, 246 F.3d at 775. Here, Dr. Goren, a neurologist, provided testimony regarding Plaintiff's physical limitations, and psychologist Dr. Rogers provided testimony regarding Plaintiff's mental limitations. Like the opinions of other medical sources, a medical expert's opinion may constitute substantial evidence when supported by other medical evidence of record. *See Atterberry v. Sec'y of Health and Human Servs.*, 871 F.2d 567, 570 (6th Cir. 1989). Although the opinion of a treating physician ordinarily is entitled to greater weight than the opinion of a non-examining medical advisor, *see Lashley v. Sec'y of Health and Human Servs.*, 708 F.2d 1048, 1054 (6th Cir. 1983), an ALJ's acceptance of an ME's opinion over the opinion of an examining or treating physician can be appropriate, especially when the medical expert has access to a claimant's entire medical record. *See Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994).

Plaintiff argues that the ALJ erred by ignoring two treating physicians' opinions and three examining consultants' opinions that Plaintiff is disabled. Plaintiff relies specifically on the assessments of: (1) Dr. Diatte, Plaintiff's long-time treating physician;[7] (2) Dr. Koblenzer, a treating psychiatrist; (3) examining medical consultant Dr. Kejriwal; (4) examining medical consultant Dr. Eggerman; and (5) examining psychological consultant Dr. Malpede. The ALJ provided some grounds for discounting each of these five opinions, but substantial evidence fails to support many of the grounds cited for rejection of the opinions. In addition, the ALJ appears to have erred by heavily relying upon Plaintiff's substance abuse as a basis for rejecting multiple

---

[7]Plaintiff testified that he had been treating with Dr. Diatte for 15 years (Tr. 617) but the record reflects treatment records only since 2005.

medical opinions. While not all of the errors would require remand standing alone, when viewed in combination it is apparent that remand is required.

### a. Treating Physician Dr. Diatte

Dr. Diatte completed three separate RFC assessments between 2005 and 2008. In August 2005, Dr. Diatte stated that Plaintiff could stand/walk for thirty minutes at a time (Tr. 324-325). In July 2007, Dr. Diatte opined that Plaintiff could stand/walk for just five minutes at a time (Tr. 319-320), and in September 2008, Dr. Diatte again opined that Plaintiff could stand/walk for no more than thirty minutes at a time (Tr. 491-496). Dr. Diatte offered other opinions concerning various postural and lifting restrictions, and concluded that Plaintiff was disabled from working.

Plaintiff admits that Dr. Diatte's records "are not as thorough as one would like." (Doc. 15 at 2). However, Plaintiff argues that Dr. Diatte "obviously completed the RFC assessments based on his years of treating and observing the Plaintiff." (*Id.*).

Unfortunately, Dr. Diatte's records leave much to be desired. Nevertheless, this Court finds that the ALJ's rejection of the entirety of Dr. Diatte's opinions presents the first of several issues that, when considered together, require remand in this case. The ALJ rejected all three of Dr. Diatte's RFC assessments for three reasons: 1) the lack of support in the objective and clinical records; 2) the alleged internal inconsistencies of the three assessments; and 3) Dr. Diatte's silence concerning Plaintiff's history of substance abuse. The first basis for rejection of Dr. Diatte's opinions is only partially valid, and the latter two criticisms reflect additional error.

Dr. Goren, the medical expert, testified that Dr. Diatte's August 2005 assessment was not supported by any of his examination records, and was contradicted by one

June 2005 progress note that reflected mostly normal findings. (Tr. 326,[8] 629-630).

Likewise, Dr. Goren testified that the July 2007 and September 2008 assessments were not supported by sufficient physical examination findings. (*See* Tr. 320, 491-496, 630, 644-645). Although Dr. Goren conceded that Dr. Diatte performed routine (and relatively frequent) physical examinations over years of treatment, Dr. Goren testified that the physical findings noted by Dr. Goren of right knee pain and crepitus, for example, do not give rise to any particular conclusions regarding Plaintiff's ability to work, apparently because Dr. Diatte did not perform functional tests. (Tr. 645). Dr. Goren also noted that Dr. Diatte's assessment does not take into account Plaintiff's recovery from a total knee replacement in September 2007. At the same time, however, Dr. Goren strongly implied that he did not know the extent of Plaintiff's recovery because the medical record lacked post-surgical and follow-up records. (Tr. 630, 634, 652).

The ALJ fully accepted Dr. Goren's criticisms, but in doing so failed to adequately consider additional relevant factors required by the regulatory framework, including the length of Dr. Diatte's treatment relationship with Plaintiff, consistency with other similar medical opinions, and number of times that Dr. Diatte examined Plaintiff over the years. *See* 20 C.F.R. §1404.1527(d). There is little doubt that Dr. Diatte's treatment records are not fully supported by objective testing, but that does not mean that the opinions may be discarded entirely without consideration of other relevant factors. *See Cole v. Astrue*, 661 F.3d 931, 937-938 (6th Cir. 2011)(if ALJ declines to give treating physician's opinion controlling weight, he must then balance additional factors to determine what

---

[8]The referenced progress note actually reflects a lengthy list of diagnoses and complaints, but the physical examination also reflects normal head, eyes, ears, nose and throat and neck areas, as well as normal lung sounds. None of the referenced "normal" functions are relied upon by Plaintiff as a basis for disability.

weight to actually give it). In this case, the ALJ simply stated that he "rejected each of the medical assessments" completed by Dr. Diatte and other physicians who opined that Plaintiff was disabled (Tr. 28), without explaining what weight if any he would give to Dr. Diatte's various opinions. This alone was error, as "[a] finding that a treating source medical opinion...is not entitled to controlling weight [does] not [mean] that the opinion should be rejected." *Cole*, 661 F.3d at 938 (quoting *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 408 (6th Cir. 2009)).

The second reason that the ALJ rejected Dr. Diatte's opinions - inconsistency between the assessments - reflects additional error. The ALJ again relied upon Dr. Goren's testimony in finding the three assessments to be inconsistent (Tr. 27). However, as Plaintiff points out, the primary "inconsistency" between the three assessments (the length of time Plaintiff can stand) is easily attributed to the time period when Plaintiff was pre and post knee-replacement surgery. Overall, the three assessments reflect few inconsistencies.

The third basis cited by the ALJ for wholesale rejection of Dr. Diatte's opinions also is problematic. The ALJ's opinion and Dr. Goren's testimony both reflect significant concern with Plaintiff's history of substance abuse. The ALJ criticized Dr. Diatte for continuing to prescribe opioids and benzodiazepines for Plaintiff despite his "well-established history of abuse of these prescription drugs," suggesting that Dr. Diatte is "not as familiar with the claimant's condition as his treating relationship might otherwise imply." (Tr. 27). In addition, while a hospital record noted Plaintiff's overuse of Xanax, Dr. Diatte continued to prescribe it. (Tr. 27, 496, 647-651).

Based upon a review of the record as a whole, it appears that the ALJ overrelied on Plaintiff's substance abuse during the initial sequential analysis, using that history to

entirely reject multiple medical source opinions - including those of Dr. Diatte- without adequately considering other highly relevant factors.

A 1996 amendment to the Social Security Act states that "[a]n individual shall not be considered to be disabled for purposes of this subchapter if alcoholism or drug addition would (but for this subparagraph) be a contributing factor material to the Commissioner's determination that the individual is disabled." 42 U.S.C. §423(d)(2)(C). The regulations that implement this legal standard carefully set forth the sequential evaluation process to be followed whenever the issue of substance abuse presents itself. Under the relevant regulations, an ALJ must *first* determine whether a claimant suffers from a disability under 20 C.F.R. §416.920, before proceeding - if necessary - to a determination of whether the substance abuse is a "contributing factor to the determination of a disability." 20 C.F.R. §416.935. Here, the record calls into question whether the ALJ improperly conflated the sequential analysis by considering Plaintiff's substance abuse issues prior to making a determination of disability. In fact, the ALJ did not even cite to the controlling regulations, 20 C.F.R. §404.1535 and §416.935.

As another district court in the Sixth Circuit explained in remanding based upon a similar error:

> To find that drug addition is a contributing factor material to the determination of disability without first finding the claimant disabled, as the ALJ did here, is to put the cart before the horse....The implementing regulations make clear that a finding of disability is a condition precedent to an application of §423(d)(2)(C).

*Williams v. Barnhart*, 338 F. Supp.2d 849, 862 (M.D. Tenn. 2004)(reversing where the ALJ improperly considered claimant's cocaine addition as detracting from the credibility of her complaints of seizure activity and other symptoms); *see also Brueggemann v. Barnhart*, 348 F.3d 689, 693-95 (8th Cir. 2003)("Substance use disorders are simply not

among the evidentiary factors our precedents and the regulations identify as probative when an ALJ evaluates a physician's expert opinion in the initial determination of the claimant's disability."); *Drapeau v. Massanari*. 255 F.3d 1211, 1214-15 (10ᵗʰ Cir. 2001).

In other words, the regulations require the Commissioner to first determine if the "gross total of a claimant's limitations, including the effects of substance use disorders, suffices to show disability" before considering the net total of "which limitations would remain when the effects of the substance use disorders are absent." *Brueggeman*. 348 F.3d at 694-695. Even though it may be difficult to determine which limitations would remain when the effects of substance abuse are taken away, "the ALJ must develop a full and fair record and support his conclusion with substantial evidence on this point just as he would on any other." *Id.* It constitutes legal error to "discount" impairments based upon substance abuse when calculating the "gross" total of a claimant's limitations. *Accord Major v. Astrue*, Case No. 1:10-cv-530-HRW-SKB, 2011 WL 3566778 (S.D. Ohio June 30, 2011)(Report and Recommendation *quoting Trent v. Astrue*, 2011 WL 841538 *3 (N.D. Ohio March 8, 2011)("if the ALJ...determines that a claimant is disabled with substance abuse, the ALJ must then proceed to conduct a second five-step analysis ...to determine if the claimant would still be disabled without the substance abuse.")).

Here as in *Brueggeman* and *Williams*, the record suggests that the ALJ prematurely discounted Plaintiff's symptoms and improperly used Plaintiff's substance abuse as a basis both for minimizing Plaintiff's symptoms and for rejecting Plaintiff's treating physician's opinions. The ALJ determined that Plaintiff failed to disclose his drug and alcohol abuse, and that Plaintiff's lack of truthfulness itself was sufficient

cause for rejecting the opinions of his treating physician.  However, that is not a proper basis for rejecting a treating physician's opinion.  *See Brueggemann*, 348 F.3d at 694.

### b.  Treating Psychiatrist Dr. Koblenzer

The ALJ's rejection of the RFC opinions of treating psychiatrist Dr. Frances Koblenzer,[9] suffers from the same defect.  The ALJ rejected his opinions on grounds that he reported significant psychological limitations in July 2007, "but failed to even mention the claimant's history of prescription substance abuse."  (Tr. 27).

Plaintiff complains that his history of abuse did not manifest itself during the period of Dr. Koblenzer's treatment.  Indeed, the only treatment records from Dr. Koblenzer reflect a total of four monthly visits, apparently for medication, between February and May 2008.  (Tr. 486-489).  However, some records presumably are missing, since Dr. Koblenzer completed a mental RFC form dated July 13, 2007 that gives Plaintiff marked and extreme limitations in nearly all work-related areas, and opines that he is unemployable.  (Tr. 484-485).  In any event, entirely discounting all of Dr. Koblenzer's opinions on grounds that he was unaware of Plaintiff's history of substance abuse constitutes error.  As with her wholesale rejection of Dr. Diatte's opinions, the ALJ erred by rejecting Dr. Koblenzer's opinions without considering factors relevant to his position as a treating physician (length of relationship, specialty, etc.), and by failing to explain what weight she would provide to this psychiatrist's opinion.

Referring to Dr. Koblenzer's description of Plaintiff as "significantly handicapped, both physically and psychologically," (Tr. 485), the ALJ also noted that "at least part of [Dr. Koblenzer's] assessment concerned the claimant being in constant pain because of

---

[9] The ALJ refers to Dr. Koblenzer using feminine pronouns; the Defendant misstates Dr. Koblenzer's first name as "Nancy."

17

being status post knee replacement [which is] beyond [his] area of expertise." (Tr. 27).

Dr. Koblenzer's opinions are clearly based upon Plaintiff's psychological issues. The

reference to Plaintiff's physical condition is fleeting and unrelated to Dr. Koblenzer's

analysis; therefore, the ALJ's rejection of the opinion on that basis also reflects error.

### c. Medical Consultant Dr. Kejriwal

The ALJ rejected the RFC opinion of Dr. Ashek Kejriwal as "not supported by any

medical findings." (Tr. 27). Dr. Kejriwal examined Plaintiff and reviewed his records in

conjunction with his application for an Ohio medical card. Dr. Kejriwal stated that

Plaintiff suffered from "severe depression x 25 years," from "uncontrolled hypertension,"

and from right knee arthritis "x 26 years." (Tr. 248). Based upon Plaintiff's various

diagnoses, Dr. Kejriwal concluded that Plaintiff suffered from restrictions that made him

"unemployable." (Tr. 249). The ALJ correctly noted that Dr. Kejriwal's opinions contain

nothing other than a short list of diagnoses in support, "without citing any specific

medical findings that would warrant such [severe] limitations." (Tr. 27). Dr. Goren, the

ME, also testified that Dr. Kejriwal's December 2006 opinion was not supported by any

findings on physical examination. (Tr. 249, 630, 644-645). Standing alone, these

reasons may be sufficient to uphold the rejection of this RFC opinion. However, the ALJ

failed to consider other relevant factors in evaluating Dr. Kejriwal's opinion, including its

consistency with Dr. Diatte's opinion and the record as a whole. Therefore, additional

review on remand is required.

### d. Consulting Psychologist Dr. Malpede

A second examining mental health professional, Jayme Malpede, Ph.D., like

Plaintiff's treating psychiatrist, also reported extreme and marked limitations in multiple

areas of mental functioning in an opinion that would have resulting in a finding of

disability. (Tr. 390-391). Like Dr. Kejriwal, Dr. Malpede examined Plaintiff on August 9, 2005[10] for purposes of Plaintiff's application for a state medical card. The ALJ rejected her opinions as "not supported by any of the other assessing mental health experts of record." (Tr. 27). To the contrary, Dr. Malpede's opinion was consistent with Dr. Koblenzer's assessment.

The ALJ additionally found that if Dr. Malpede's opinion was accurate and "the claimant were truly subject to such extreme or marked limitations, he would not be able to function on a daily basis in a manner consistent even with his own testimony." (Tr. 27-28). Last, the ALJ rejected Dr. Malpede's opinion because it was based upon a one-time examination and not supported by any treatment records. (Tr. 28). Like the rejection of Dr. Kejriwal's opinions, these latter bases for rejecting Dr. Malpede's opinions find some support in the record. However, the failure to consider the consistency of Dr. Malpede's opinions with other examining and treating source opinions requires remand.

### e. Consulting Psychiatrist Dr. Eggerman

The fourth physician opinion rejected by the ALJ was the assessment of examining consultant Kevin Eggerman, M.D., a psychiatrist who evaluated Plaintiff in May 2008. Dr. Eggerman diagnosed recurrent major depressive disorder and dysthymia, along with a cognitive disorder not otherwise specified. (Tr. 28). The ALJ acknowledged that Dr. Eggerman's assessment "would appear to render the claimant unable to work," but rejected the assessment on grounds that it was based "at least partially" upon an incorrect statement by Plaintiff to Dr. Eggerman that Plaintiff had

---

[10] Plaintiff's counsel incorrectly describes Dr. Malpede as a "treating" physician. (Doc. 15 at 3).

suffered a stroke in December 2007. No evidence of stroke appears in Plaintiff's medical records, and Dr. Goren opined that Plaintiff's December 2007 symptoms were likely due to overuse of medication rather than to stroke. "Dr. Eggerman was not aware of this, nor was he apprised of the claimant's history of alcohol consumption and prescription substance abuse. Given the claimant's lack of honesty with Dr. Eggerman concerning his medical history, the reliability of Dr. Eggerman's overall report is questionable." (Tr. 28). The ALJ concluded by giving greater weight to the assessment of George Rogers, Ed.D., the psychological expert who testified at the hearing, because Dr. Rogers had before him Plaintiff's complete medical records including those of Dr. Eggerman. (Tr. 28).

Dr. Rogers criticized the mental RFC assessments completed by three other sources, including Dr. Eggerman, because their opinions were based upon one-time events or acceptance of Plaintiff's subjective reports. (Tr. 653-658, 663-665). A non-examining reviewer, Dr. Rogers expressed doubt concerning the various opinions that Plaintiff had "marked" and "extreme" limitations based primarily upon Plaintiff's history of drug seeking behavior and substance abuse history. Dr. Rogers noted that Plaintiff received little treatment beyond medications, making the severity of his psychological issues "hard to determine." (Tr. 658, 665). The ALJ noted that Dr. Rogers' opinion was consistent with the limitations found by one other consultant, Dr. Alice Chambly. (Tr. 25-26; *see also* Tr. 216, 226, 246).

Plaintiff persuasively argues that the ALJ's rejection of Dr. Eggerman's opinion based on a presumed lack of knowledge of Plaintiff's substance abuse fails to account for Dr. Eggerman's significant clinical findings, including psychomotor slowing, increased latency of response, moderately severe cognitive slowing, slow thought

20

processes, diminished range of affect, depressed mood, moderately severe anxiety and poor concentration (Tr. 381-383). Plaintiff asserts that such findings on examination are consistent with the RFC "regardless of whether Plaintiff may or may not have had a stroke or failed to report past alcohol and/or drug dependence." (Doc. 10 at 17). Again, the ALJ appears to have erred by over-reliance upon Plaintiff's substance abuse as a basis for rejecting this opinion, without adequate consideration of other relevant factors required by the regulatory framework.

### 3. Plaintiff's IBS and Chronic Diarrhea

In his third claim, Plaintiff asserts that the ALJ erred by failing to find that his irritable bowel syndrome ("IBS") and associated chronic diarrhea were "severe."

In finding these complaints to be non-severe, the ALJ again relied upon Dr. Goren, who opined that Plaintiff's IBS "responds to treatment and does not impose any ongoing limitation." (Tr. 22; *see also* Tr. 631, 635-636, 647). As further support for finding that Plaintiff's intestinal issues were non-severe, despite erratic weight loss of up to 100 pounds, the ALJ noted that Plaintiff has not sought any ongoing treatment from a GI specialist such as a gastroenterologist. (Tr. 22; Tr. 642-43, 647, 650). In rejecting Plaintiff's position that his diarrhea precludes full-time employment, the ALJ also discussed Dr. Goren's testimony that more powerful medication "could have been prescribed." (Tr. 23).

Plaintiff points to three records that support his complaints of diarrhea over time, (Tr. 397, 405, 423) to argue that his diarrhea was both chronic in nature and severe. In a record dated December 16, 2007, for example, a physician to whom Plaintiff was

referred for a consultation[11] observed that Plaintiff's diarrhea "is rather chronic in nature and has been an ongoing issue for several months, possibly even for several years." (Tr. 423). In a second record dated January 31, 2008, the examining physician noted that Plaintiff had diarrhea 8-9 times per day. (Tr. 397). A third record referenced by Plaintiff refers to his report that he was then experiencing diarrhea caused by eating a "bad apple." (Tr. 405).

Plaintiff argues that "having to use the restroom 8-9 times during the workday would preclude being able to work a 40 hour week sustained job," (Doc. 10 at 19), but ignores several key facts. Only one note references diarrhea episodes of 8-9 times per day- nowhere else in the medical records is Plaintiff's diarrhea noted to be that severe on a chronic basis. For example, one of the three records cited by Plaintiff reports an acute episode of diarrhea, stomach cramps and vomiting that had lasted for just 1 ½ weeks. (Tr. 405). Notwithstanding one hospital reference to Plaintiff's diarrhea as "chronic," (Tr. 423), no other records suggest that Plaintiff's symptoms remained constant. In fact, the same December 2007 hospital record reflects that Plaintiff was taking medication for his diarrhea, that he had "[n]o abdominal pain, nausea, or vomiting" and had not experienced any "current weight loss" from his symptoms. (*Id.*). Another record, dated February 2008, states that Plaintiff denied any nausea or diarrhea. (Tr. 329).

Additionally, even if the January 2008 referenced degree of severity of 8-9 episodes per day had remained constant (contrary to the record), that does not mean

---

[11]The specialty of the consulting physician, Dr. Pradeep Kumar T. Bekal, is not listed. The record appears to be from a consultation sought during Plaintiff's admission to the hospital at that time on psychiatric grounds.

that Plaintiff would be precluded from all work, since presumably many of those episodes would occur during non-working hours. No medical source has offered any opinion in support of work limitations resulting from Plaintiff's diarrhea. In short, the medical record as a whole as well as the testimony of the medical expert constitutes substantial evidence that Plaintiff's diarrhea and IBS do not preclude him from employment or require additional functional limitations.

Plaintiff very briefly references additional records concerning other intestinal complaints, including erosive gastritis, esophagitis, and GERD. (Doc. 10 at 19, citing Tr. 329, 513). However, Plaintiff fails to explain what, if any, work limitations might arise from that medical history, and again, no treating or examining source has offered work limitations that relate to those sporadic complaints. Therefore, there is no error as to this issue.

### 4. Complaints of Pain

As his last assignment of error, Plaintiff argues that the ALJ failed to adequately consider his subjective complaints of disabling pain. Plaintiff notes that following his knee replacement surgery, he was on a pain pump (Tr. 344) and was diagnosed with chronic pain syndrome (Tr. 341). Plaintiff reported that his pain was an "8" on a 10-point scale on May 21, 2005 (Tr. 304), and at other times reported severe, chronic and progressive pain. (Tr. 319, 408-409, 341, 343). Plaintiff asserts that the ALJ's "failure to consider Plaintiff's pain complaints as severe requires that the decision be reversed and remanded for reconsideration." (Doc. 10 at 20).

The post-surgical records concerning Plaintiff's recovery from knee replacement surgery are scarce and inconsistent. Plaintiff remained "dependent on high levels of narcotics" but in mid-October 2007, reported no pain or stiffness. (Tr. 341, 406). Dr.

Goren testified that the records failed to show any follow-up care from the surgeon, but also opined that it was "unlikely" that Plaintiff never obtained any follow-up care, such as for the removal of stitches. (Tr. 630).

Once again, the ALJ's primary basis for rejecting Plaintiff's claims of disabling pain appears to have been Dr. Goren's testimony, and Plaintiff's history of substance abuse. The ALJ reasoned that if Plaintiff "is in the habit of lying about his prescription substance abuse, it logically follows that he may well be less than honest when describing his current physical and psychological impairments, his symptoms, and his medical limitations in his attempt to obtain disability." (Tr. 26-27).

In addition to focusing on Plaintiff's historical substance abuse, Dr. Goren testified the diagnosis of "chronic pain syndrome" in Plaintiff's records was "not specific enough." (Tr. 636-637). However, numerous courts within the Sixth Circuit have recognized the diagnosis of chronic pain syndrome in evaluating social security claims. *See, e.g., Tharp v. Comm'r of Soc. Sec.*, 2010 WL 3583363 at n.1 (E.D. Mich. June 17, 2010)(discussing the syndrome, and quoting from the Mayo Clinic and NIH websites).

Although the ALJ's rejection of Plaintiff's complaints of disabling pain is not wholly unsupported, the record suggests that her analysis was colored by the errors previously noted. For that reason, the issue should also be reviewed on remand. *Accord Hudson v. Astrue*, 2010 WL 3940985 (M.D. Tenn. Oct. 6, 2010)(remand required where ALJ failed to comply with regulatory scheme for evaluation of alcohol abuse).

### III. Conclusion and Recommendation

A sentence four remand under 42 U.S.C. §405(g) provides the required relief in cases where there is insufficient evidence in the record to support the Commissioner's

conclusions and further fact-finding is necessary. *See Faucher v. Secretary of Health and Human Servs.,* 17 F.3d 171, 174 (6th Cir. 1994) (citations omitted). In a sentence four remand, the Court makes a final judgment on the Commissioner's decision and "may order the Secretary to consider additional evidence on remand to remedy a defect in the original proceedings, a defect which caused the Secretary's misapplication of the regulations in the first place." *Faucher,* 17 F.3d at 175.

For the reasons explained herein, **IT IS RECOMMENDED THAT**:

1. The decision of the Commissioner to deny Plaintiff DIB and SSI benefits be **REVERSED** and this matter be **REMANDED** under sentence four of 42 U.S.C. §405(g);

2. On remand, the ALJ should carefully reevaluate: a) the weight to be given to the opinions of treating physicians, Drs. Diatte and Koblenzer, as well as to the opinions of examining consultants Drs. Kejriwal, Malpede, and Eggerman; b) whether the record demonstrates any additional limitations, including restrictions on persistence and pace, and/or limitations based upon Plaintiff's complaints of disabling pain. In conducting further review on remand, the ALJ also should re-evaluate whether Plaintiff suffers from a disability based upon the gross total of his limitations, prior to determining which limitations would remain when the effects of any limitations resulting from substance abuse are excluded;

3. As no further matters remain pending for the Court's review, this case be **CLOSED.**

> */s Stephanie K. Bowman*
> Stephanie K. Bowman
> United States Magistrate Judge

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

GAWAYNE MCKNIGHT,                                    Case No. 1:11-cv-116

       Plaintiff,                                    Dlott, J.
                                                     Bowman, M.J.
   v.

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY,

       Defendant.

## NOTICE

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to this Report & Recommendation ("R&R") within **FOURTEEN (14) DAYS** of the filing date of this R&R.  That period may be extended further by the Court on timely motion by either side for an extension of time.  All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections.  A party shall respond to an opponent's objections within **FOURTEEN (14) DAYS** after being served with a copy of those objections.  Failure to make objections in accordance with this procedure may forfeit rights on appeal.  *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).